# In the United States Court of Federal Claims

|  |  |
|---|---|
| TAINO CONSTRUCTION GROUP, LLC, | |
| Plaintiff, | No. 24-cv-2030 |
| v. | Filed: July 31, 2025 |
| THE UNITED STATES, | |
| Defendant, | |

*Gary Green* of Sidkoff, Pincus & Green, P.C., Philadelphia, PA appeared for Plaintiff. With him on the briefs was *Larry M. Keller* of Sidkoff, Pincus & Green, P.C., Philadelphia, PA.

*Rafael Shapiro* of the United States Department of Justice, Civil Division, Washington, D.C. appeared for Defendant. With him on the briefs were *Patricia M. McCarthy*, *Eric P. Bruskin*, and *Yaakov Roth*, of the United States Department of Justice, Civil Division, Washington, D.C., and *Matney E. Rolfe* of the United States Department of the Air Force.

## MEMORANDUM AND ORDER

Soon after the Department of the Air Force (Air Force) contracted with Taino Construction Group, LLC (Taino) to demolish nine buildings at Fort Eustis in Virginia, the Air Force began having issues with Taino's performance. After providing Taino with multiples notices and opportunities to cure, the Air Force terminated Taino's contract in 2021. After submitting its Certified Claim to the contracting officer seeking payment for allegedly completed work that the Air Force did not accept prior to termination, Taino now lodges claims here for breach of contract and breach of the implied duty of good faith and fair dealing.

Taino's claims face two dispositive hurdles. *First*, Taino's Certified Claim lacked any details related to its breach of the implied duty of good faith and fair dealing claim, which falls far short of the "clear and unequivocal statement that gives the contracting officer adequate notice of

the basis and amount of the claim" required to satisfy the Contract Disputes Act's (CDA's) jurisdictional presentment requirement. *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)). Thus, this Court lacks jurisdiction over this claim as Taino did not properly present this claim to the contracting officer. *Second*, Taino's contract with the Air Force expressly provides that, in the event of a termination for cause, "the Government shall not be liable to the Contractor for any amount for supplies or services not accepted." Ex. A (ECF No. 1-2) (the Contract) at 15 (quoting FAR 52.212-4(m)). All parties agree that Air Force did not accept the work for which Taino now seeks payment. Thus, Taino fails to state a breach of contract claim because it is not entitled to a legal remedy on the facts it alleges. Accordingly, the Court Grants the Air Force's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

## FACTUAL HISTORY

On January 30, 2020, the Air Force awarded Taino a contract to demolish nine buildings at Fort Eustis in Virginia for a firm-fixed price of $968,750. ECF No. 1 (Compl.) ¶¶ 24–26, 39; Contract at 2–3, 5.[1] The Contract expressly incorporates the CDA and multiple provisions of the

---

[1] The exhibits to Taino's Complaint are cited as "Ex." followed by a corresponding letter. *See* ECF Nos. 1-2–1-16 (Exhibits A–O). Where appropriate, the exhibits are defined as, and referred to by, a shorthand for clarity and ease of reference. When considering Defendant's Motion under both Rules 12(b)(1) and 12(b)(6), the Court may rely upon exhibits attached to Taino's Complaint. *Sharifi v. United States*, 987 F.3d 1063, 1067 (Fed. Cir. 2021) (explaining that exhibits to the Complaint may be considered at 12(b)(6) stage as the exhibits "are not 'matters outside the pleadings.'" (quoting Rule 12(d))); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)) (noting that where a Rule 12(b)(1) motion "challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute"); *see also AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 34 (Fed. Cir. 2024) ("Review of a motion to dismiss under Rule 12(b)(6) is generally limited 'to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007))); where the Complaint's exhibits contradict Taino's contentions, the Court must follow the exhibits. *Allen Eng'g Contractor, Inc. v. United States*, 115 Fed. Cl. 457, 464 (2014) ("In the event of

Federal Acquisition Regulation (FAR) in full and by reference.[2]  Contract at 14 ("This Contract is subject to 41 U.S.C. chapter 71, Contract Disputes. . . .  [Disputes] arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference." (quoting FAR 52.212-4(d))).  FAR 52.212-4, incorporated into the Contract in full and by reference, provides that "[t]he Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor," and, that in the event of such a termination, "the Government shall not be liable to the Contractor for any amount for supplies or services not accepted . . . ."  Contract at 15 (quoting FAR 52.212-4(m)); *see id.* at 13–16 (incorporating full text of FAR 52.212-4(m)).

In December 2020, Taino submitted two invoices totaling $217,968.75—reflecting that it had completed 22.5% of the Contract, which the Air Force paid in full.  Ex. O (ECF No. 1-16) at 2;[3] *see* Compl. ¶ 39 (noting that the Air Force paid Taino $217,968.75).  By March 2021, Taino's performance had begun to crumble.  On March 19, 2021, the Air Force issued its first cure notice to Taino.  Compl. ¶ 31; Ex. G (ECF No. 1-8) (First Cure Notice) at 2.  In its First Cure Notice, the Air Force notified Taino of four "failures that need[ed] to be corrected," including Taino's

---

conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991))), *aff'd*, 611 F. App'x 701 (Fed. Cir. 2015); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (3d ed. 2004 & Supp. 2016) (Wright & Miller).

[2] The Federal Acquisition Regulation (FAR) is contained in Chapter 48 of the Code of Federal Regulations.  All references to the FAR are shorthand for "48 C.F.R. §."

[3] Citations throughout this Memorandum and Order correspond to the ECF-assigned page numbers, which do not always correspond to the pagination within the document.  Exhibit O is the Contracting Officer's Final Decision denying Taino's Certified Claim, which contains a full record of the correspondence between Taino and the Air Force.

(i) failure to provide an "AF 3064 Contract Progress Schedule in a timely manner,"[4] (ii) unavailability of its superintendent on the work site during operations, (iii) failure to secure Defense Biometric Identification System Passes for the work crew to begin work, and (iv) nonresponsiveness to calls and emails. First Cure Notice at 2. The Air Force warned Taino that if it failed to cure these issues within ten days, by March 29, 2021, "the Government may terminate [Taino] for default under the terms and conditions of the FAR 49.607."[5] *Id.* Twelve days later, on March 31, 2021, Taino responded to the First Cure Notice. Compl. ¶ 31; Ex. H (ECF No. 1-9) (Resp. to Cure Notice) at 2. Taino asserts that it "responded to . . . and remedied all such issues" raised in the First Cure Notice. Compl. ¶ 31.

On March 31, 2021, Taino also submitted another Contract Progress Schedule, reflecting that it had completed 27.10% of the Contract. *Id.* ¶ 32; Ex. I at 2. On April 8, 2021, the contracting officer denied the schedule because (i) "[n]o backfill or any other work ha[d] been done on item 7," the demolition of exterior buildings, (ii) "[t]he numbers on the finished % d[id] not add up correctly," and (iii) Taino "[m]ark[ed] work % complete on items that ha[d] not yet been

---

[4] The parties' briefing, the exhibits to the Complaint, and this Memorandum and Order reference Taino's submission of Contract Progress Schedules and Contract Progress Reports. Contract Progress Schedules are submitted as Air Force Form 3064 (AF 3064). Contract Progress Reports are submitted as Air Force Form 3065 (AF 3065). The Air Force required Taino submit these forms for approval before Taino submitted invoices. Ex. O at 31 ("Address why invoices are still being submitted without an approved progress report/schedule."); *see also* FAR 52.236.16 ("If the Contractor fails to submit a schedule within the time prescribed, the Contracting Officer may withhold approval of progress payments until the Contractor submits the required schedule."). As the Air Force required these progress reports and progress schedules prior to payment, there are multiple form AF 3064 and 3065s attached as exhibits. *See, e.g.*, Ex. C (ECF No. 1-4) at 2; Ex. I (ECF No. 1-10) at 2; Ex. M (ECF No. 1-14) at 2; Ex. O at 13, 18, 19, 41.

[5] The terms "termination for default" and "termination for cause" both refer to termination resulting from some default on the contractor's behalf. The Contract provides that the "Government may terminate this contract . . . for cause in the event of any default by the Contractor." Contract at 15. For consistency with the language used in the Contract, the Court uses the term "termination for cause" throughout this Memorandum and Order.

completed." Ex. O at 8, 13.  The Air Force contracting officer requested a teleconference with

Taino to discuss these performance issues and suggested that Taino contact Harriet Reynolds, an

Air Force contract specialist, to schedule the conference.  *Id.* at 8–9.

Later that same day, Ms. Reynolds emailed Taino to request "a date and time to discuss

issues and concerns to the contract . . . as soon as possible" and "a revised [AF] 3064 and [AF]

3065 . . . ." Ex. J (ECF No. 1-11) (Reynolds Email) at 2 (emphasis omitted); Compl. ¶ 33.  Neither

the Complaint nor its exhibits reflect whether this conversation occurred.  In her email, Ms.

Reynolds specifically instructed Taino to adjust certain calculations in its AF Forms 3064 and

3065.[6]  Reynolds Email at 2.  Taino contends that Ms. Reynolds's email "request[ed] that Taino

submit a revised Contract Progress Report," and that this revised Contract Progress Report "would

show a progress of 46.70% completion of the Project, not the 27.10% progress that Taino

submitted."  Compl. ¶¶ 33, 40.  On April 12, 2021, Taino submitted a revised Progress Schedule

and Progress Report reflecting 46.70% completion of the Contract.  *Id.* ¶ 36; Ex. C at 2; Ex. M at

---

[6] Ms. Reynolds instructed Taino to reallocate the percentages of certain line items, which the Court best understands as a request to reallocate those percentages within the percentage of the total job column.  *See* Reynolds Email at 2; Ex. I.  The Contract Progress Report contains a listing of the line items of work, the percentage of the job that each line item represents, and the percentages of each line item that have been completed in total and for the specific period that the Contract Progress Report covers.  Ex. I.  There are seven line item rows with descriptions of work and three columns with percentages of work completed, but the seventh line item contained two items, which Ms. Reynolds referenced as "line item 7/8." *Id.*; Reynolds Email at 2.  Specifically, Ms. Reynolds requested that Taino reallocate 4.6% from line item three, "E&S plans," and 19% from line item 7/8, which includes demolition and backfilling, to line item one, which contains logistics and planning.  Reynolds Email.  Making these adjustments in the percentage of total job column, the new total for line item one would be 38.6% after adding 4.6% and 19% to line item one, which was originally 15%.  Ex. I.  38.6% is precisely what Ms. Reynolds indicates that the total should be in her email for line number one.  *Id.* (noting that these changes bring line item one to "'38.6%' for the plan submissions").  With 38.6% in line item one, and after removing the 4.6% from line item three and 19% from line items seven and eight, the "% of total job" column still adds up to 100%.

2; Ex. O at 22.[7]  On April 26, 2021, the Air Force denied the revised report and schedule, stating

that "[w]ith the lack of movement on this project[,] the government will work toward moving

forward with a Termination for Cause."  Ex. O at 21.

On April 28, 2021, Air Force sent a second cure notice to Taino.  Ex. D (ECF No. 1-5)

(Second Cure Notice) at 2.[8]  The Second Cure Notice directed Taino to "[p]rovide an updated and

correct AF 3064 Contract Progress Schedule" and raised concerns regarding "DBID[S] Passes not

---

[7] The Court believes Taino misunderstood—and continues to misunderstand—Ms. Reynolds's directions as requesting Taino submit a report indicating that the 4.6% and 19% from line items 3 and 7/8 had been completed.  Accordingly, Taino added this 23.6% to the 15% of work it claimed to have already completed for line item one.  Ex. C at 2.  The percentage completed for the period—March 1 through March 31, 2021—at issue in the Contract Progress Report (Ex. I) and the Revised Contract Progress Report (Ex. C) did not reflect that Taino had completed this work during the period.  Indeed, in the original Contract Progress Report, Taino contended that for line item one, it had completed 15% of the work that period and in total.  Ex. I.  In its revised Contract Progress Report following Ms. Reynolds's email, Taino suddenly contended that it had completed 38.6% of the work in total but only indicated that it had completed 16.1% for that period.  Ex. C.  Of course, Taino could not have realistically completed an additional 19.6% of work in a month that had already ended.  *Compare id.* (showing 46.70% of work completed at end of March 2021), *with* Ex. I (showing 27.10% of work completed at end of March 2021).  Regardless of what Ms. Reynolds directed Taino to do, Ms. Reynolds, a contract specialist, lacked the authority to bind the United States because she was not the contracting officer.  *See* FAR 1.602-2(d)(5); *see also* Ex. F (ECF No. 1-7) at 6 (noting that contracting officer has exclusive authority to approve changes).  Further, Taino's Response did not rebut the Air Force's argument that Ms. Reynolds lacked the authority to bind the Air Force.  Mot. at 29–30; *see generally* Resp.; *see Square One Armoring Servs. Co. v. United States*, 162 Fed. Cl. 331, 343 (2022) (finding that a "Plaintiff waived any arguments . . . by failing to respond to Defendant's position in its Response.").

[8] Taino's Complaint alleges that the April 28, 2021 letter, attached to the Complaint as Exhibit D, "advis[ed] [Taino] that the revised Contract Progress Report in the amount of 46.70% had been disapproved . . . ."  Compl. ¶ 37.  The exhibits attached to Taino's Complaint, however, indicate that the Air Force rejected Taino's Revised Progress Report via email on April 26, 2021, and that Exhibit D was the Second Cure Notice—not a disapproval of Taino's Revised Progress Report.  Ex. O at 21; Second Cure Notice at 2; *see also* Ex. O at 3 (recounting timeline of events).  Here, where the Complaint's exhibits contradict Taino's contentions, the Court must follow the exhibits.  *Allen Eng'g*, 115 Fed. Cl. at 464 (quoting *Fayetteville Invs.*, 936 F.2d at 1465; *see supra* note 1.  Further, the Court notes that the allegations in the Complaint omit discussion of certain records attached to the Complaint at Exhibit O, including the Show Cause Notice and Letter of Assurance that the Government issued to Taino on July 14, 2021, before terminating Taino's Contract.  *See* Ex. O at 3; *id.* at 29 (Show Cause Notice); *id.* at 31 (Request for Assurances).

6

available for work crew to begin work," "[c]ontinued communication" issues, and "[c]ontinued incorrect invoicing for already paid work." *Id.*  Taino's Complaint does not allege that Taino responded to the Second Cure Notice. *See generally* Compl.; *see also* Ex. O at 31 (noting that the Air Force received "[n]o communication response . . . since issuance of second cure notice dated 28 April 2021").

On July 14, 2021, building on its earlier warnings to Taino, the Air Force issued two additional notices: a Show Cause Notice and a Request for Assurances. Ex. O at 3; *id.* at 29 (Show Cause Notice); *id.* at 31 (Request for Assurances).  *First*, the Show Cause Notice indicated that the Air Force was considering terminating the Contract because Taino failed to perform or cure the conditions described in the prior cure notices.  *Id.* at 29.  *Second*, the Request for Assurances noted that Taino "ha[d] not been on site since January" and "ha[d] not been responsive to the Government['s] request that Taino perform [in accordance with] the contract terms."  *Id.* at 31. Taino does not allege that it responded to either the Notice or the Request for Assurances, nor do any of the exhibits attached to its Complaint indicate that it responded.  *See generally* Compl.; Ex. O at 1–59; Ex. E (ECF No. 1-6) (Termination Notice) at 2–3 (noting Taino "failed to provide assurances of future performance").

On September 20, 2021, the Air Force terminated Taino's Contract "under the authority of FAR 12.403(c)(3), Termination for Cause," effective immediately.  Compl. ¶ 38; Termination Notice at 2.  The Air Force listed the following reasons for termination:

- Failed to provide a correct revised AF 3064 Contract Progress Schedule.
- Failed to meet schedule performance and failed to provide assurances of future performance.
- Vendor not reporting on site for work.
- Defense Biometric Identification System (DBIDS) passes not available for workforce to start work.
- Lack of communication (nonresponsive to telephone calls, emails and scheduled meetings).

- Incorrect invoicing for work already paid.
- Superintendent unavailable during operations on work site.

*Id.*  The Termination Notice stated that "this notice constitutes the final decision of the contracting officer and you have the right to appeal under the Disputes clause."  *Id.*  Taino does not allege that it appealed the termination for cause determination.  *See generally* Compl.

Two years later, on November 14, 2023, Taino submitted its Certified Claim to the contracting officer, seeking $234,437.50.[9]  Compl. ¶ 39; Ex. O at 57–59; Ex. N (ECF No. 1-15) (Certified Claim) at 2–3.  Specifically, Taino certified that "cost or pricing data . . . submitted, either actually or by specific identification in writing, to the Contracting Officer or to the Contracting Officer's representative in support of $234,437.50 are accurate, complete, and current as of 11/13/2023."  Certified Claim at 2.  Along with the certification, Taino attached the Reynolds Email, a copy of the April 12 AF 3065 Progress Report, and a "Contract Cost Breakdown" chart, which indicated the percentage of work purportedly completed, less invoices already paid by the Air Force.  *Id.* at 2–3; Ex. O at 50–55 (Certified Claim with all attachments).  This chart reflects how Taino calculated its claim for $234,437.50.  Certified Claim at 2–3; Ex. O at 52.  On December 20, 2023, the contracting officer issued a final decision, denying Taino's requested payment on the ground that the Air Force had rejected Taino's progress report before termination.  Compl. ¶ 40; Ex. O at 3–4.

---

[9] Taino's Complaint alleges that Taino submitted the Certified Claim on November 13, 2023. Compl. ¶ 36.  Although Taino executed the Certified Claim on November 13, 2023, Certified Claim at 2–3, Taino submitted the claim the following day by email on November 14, 2023, Ex. O at 50, 58–59.  Further, before submitting its Certified Claim (which includes a signed certification of the claim's accuracy as provided in FAR 15.406-2), Taino submitted an uncertified claim for an incorrect sum of money.  Ex. O at 3, 37–40, 57–59.  In response, the Air Force's contracting officer directed Taino to "follow the instructions under FAR Clause 52.233-1 (Disputes)" and to submit a certified claim as Taino's claim exceeded $100,000.  *Id.* at 37, 46.

**PROCEDURAL HISTORY**

In its December 11, 2024 Complaint, Taino alleges two counts stemming from the Air Force's termination of the Contract for cause.  *See* Compl.  For both counts, Taino seeks the same relief: $234,437.50.  *Id.* ¶¶ 42–46, 47–52.  Taino contends the Air Force owes it this amount for work Taino purportedly completed prior to termination.  Taino's first count is for breach of contract, alleging that the Air Force failed to pay Taino for work Taino contends it completed prior to termination.  *Id.* ¶¶ 42–46.  Taino's second count is for breach of the implied duty of good faith and fair dealing, based on the same alleged failure of the Air Force to compensate Taino for allegedly completed work.  *Id.* ¶¶ 47–52.

On March 24, 2025, the Air Force filed its Motion to Dismiss under Rules 12(b)(1) and 12(b)(6).  ECF No. 12 (Mot.).  The Air Force asserts three grounds for dismissal.  *First*, it contends that this Court lacks jurisdiction over Taino's breach of implied duty claim, because Taino did not adequately present this claim to the contracting officer.  *Id.* at 18–22.  *Second*, it argues that Taino fails to state a claim upon which relief can be granted as to both its breach of contract and breach of implied duty claims, because the claims amount to an untimely, collateral challenge to the Air Force's termination of the Contract for cause.  *Id.* at 22–26.  *Third*, the Air Force asserts that Taino fails to state a claim upon which relief can be granted for its breach of contract and breach of implied duty claims because the Contract, the FAR, and applicable precedent prohibit Taino from recovering damages based on completed but unaccepted work following a for-cause termination. *Id.* at 27–32.  Taino filed its Response to the Air Force's Motion to Dismiss on May 8, 2025 and the Air Force filed its Reply on May 22, 2025.  ECF No. 16 (Resp.); ECF No. 17 (Reply). Accordingly, the Air Force's Motion to Dismiss is ripe for adjudication.

## APPLICABLE LEGAL STANDARDS

Under Section 1491(a)(2) of the Tucker Act, this Court possesses exclusive jurisdiction over all CDA claims.  28 U.S.C. § 1491(a)(2) ("The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 . . . ."); *see* 41 U.S.C. § 7101, *et seq.*  "The CDA exclusively governs Government contracts and Government contract disputes." *Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052, 1055 (Fed. Cir. 1993).  Thus, "[w]hen the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution." *Tex. Health Choice, L.C. v. Off. of Pers. Mgmt.*, 400 F.3d 895, 898–99 (Fed. Cir. 2005) (alteration in original) (quoting *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995)).

The CDA imposes strict jurisdictional prerequisites, which must be met for each individual claim. *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) (citing *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1281 (Fed. Cir. 1985)); *see M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327–32 (Fed. Cir. 2010).  To establish jurisdiction under the CDA, a plaintiff must demonstrate that it (i) previously submitted each claim to the contracting officer, and (ii) received a final decision from the contracting officer on each claim.  *K-Con Bldg. Sys.*, 778 F.3d at 1005; *see also Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 775 (Fed. Cir. 2021) ("The CDA mandates that '[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision.'" (quoting 41 U.S.C. § 7103(a)(1))).  "A claim is 'a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.'" *K-Con Bldg. Sys.*, 778 F.3d at 1005 (quoting *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc)).

This Court must dismiss claims outside its subject matter jurisdiction. Rules 12(b)(1), 12(h)(3); *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 992–93 (Fed. Cir. 2019) ("It is well settled that limitations on subject-matter jurisdiction are not waivable. . . ."). When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *see also Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014). Where "a motion to dismiss 'challenges the truth of the jurisdictional facts,' the Court of Federal Claims 'may consider relevant evidence in order to resolve the factual dispute.'" *Freeman v. United States*, 875 F.3d 623, 627 (Fed. Cir. 2017) (quoting *Banks*, 741 F.3d at 1277); *see also Reynolds*, 846 F.2d at 747 (Fed. Cir. 1988) (citing *Land*, 330 U.S. at 735) (same).

To withstand a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff also must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (second alteration in original) (internal citations omitted). "The Court of Federal Claims may properly grant a motion to dismiss under [Rule] 12(b)(6) when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021) (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).

11

At the motion to dismiss stage, this Court must "take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Boyd v. United States*, 134 F.4th 1348, 1352 (Fed. Cir. 2025) (quoting *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017)). The Court, however, need not "accept the asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). The Court "must consider the complaint in its entirety" as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court may rely on exhibits attached to the Complaint, as these "are not 'matters outside the pleadings.'" *Sharifi*, 987 F.3d at 1067 (quoting Rule 12(d)); *see also AlexSam, Inc.*, 119 F.4th at 34 ("Review of a motion to dismiss under Rule 12(b)(6) is generally limited 'to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" (quoting *McCarthy*, 482 F.3d at 191)). "In the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Allen Eng'g*, 115 Fed. Cl. at 464 (quoting *Fayetteville Invs.*, 936 F.2d at 1465), *aff'd*, 611 F. App'x 701; Wright & Miller § 1327 (explaining that the Court "obviously is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions"); *see also Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1326 (Fed. Cir. 2016) (favorably quoting Wright & Miller § 1327).

## **DISCUSSION**

As noted above and described further below, Taino cannot surmount two dispositive hurdles in the case. *First*, as a jurisdictional prerequisite, the CDA requires contractors to submit all claims to the contracting officer with "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Scott Timber*, 333 F.3d

at 1365 (quoting *Contract Cleaning Maint.*, 811 F.2d at 592). Here, Taino's Certified Claim did not provide adequate notice to the contracting officer because it provided no description of the claim beyond a request for payment—far from the "clear and unequivocal statement" required by the CDA. *Infra* § I. Thus, this Court lacks jurisdiction over Taino's claim for breach of the implied duty of good faith and fair dealing that Taino did not properly present to the contracting officer.

*Second*, Taino's Contract with the Air Force expressly provides that, in the event of a termination for cause, "the Government shall not be liable to the Contractor for any amount for supplies or services not accepted." *Id.* (quoting FAR 52.212-4(m)). Here, Taino acknowledges that the Air Force did not accept the work for which Taino now seeks payment. Compl. ¶¶ 8, 37; Ex O at 21 (denying Taino's Contract Progress Report). Accordingly, Taino fails to state a claim because it is not entitled to a legal remedy on the facts it alleges. *Steffen*, 995 F.3d at 1379.

*Third*, having determined that Taino's Complaint must be dismissed, the Court declines Taino's alternative requests to (1) file an amended complaint and (2) stay the case while Taino presents a certified claim to the contracting officer for breach of the implied duty of good faith and fair dealing.

I. **This Court Lacks Jurisdiction Over Taino's Claim for Breach of The Implied Duty of Good Faith and Fair Dealing Because Taino Failed to Present This Claim to The Contracting Officer.**

The Air Force moves to dismiss Taino's breach of implied duty claim for lack of subject matter jurisdiction because, it asserts, Taino did not present this claim to the contracting officer as required by the CDA. Mot. at 18–22; 41 U.S.C. § 7103(a)(1). Because Taino's Certified Claim only requested money and included no statement identifying the factual or legal basis for its demand, it did not properly present its claim for breach of the duty of good faith and fair dealing to the contracting officer. Certified Claim at 2. Therefore, the Court dismisses Taino's Count II for lack of jurisdiction under Rules 12(b)(1) and 12(h)(3).

To establish jurisdiction under the CDA, a plaintiff must both (i) submit each claim to the contracting officer and (ii) receive a final decision from the contracting officer on each claim. *K-Con Bldg. Sys.*, 778 F.3d at 1005; *see also Raytheon Co. v. United States*, 747 F.3d 1341, 1354 (Fed. Cir. 2014) (citing 41 U.S.C. § 7103(a)(3)) ("It is a bedrock principle of government contract law that contract claims, whether asserted by the contractor or the Government, must be the subject of a contracting officer's final decision."). "A claim need not 'be submitted in any particular form or use any particular wording . . . .'" *K-Con Bldg. Sys.*, 778 F.3d at 1005 (quoting *Contract Cleaning Maint.*, 811 F.2d at 592). Rather, the contractor must "submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Scott Timber*, 333 F.3d at 1365 (quoting *Contract Cleaning Maint.*, 811 F.2d at 592); *see also Tolliver Grp.*, 20 F.4th at 776 ("The focus is on whether the contracting officer was given 'an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request.'" (quoting *K-Con Bldg. Sys.*, 778 F.3d at 1006)).

To determine if a claim has been presented, the key question is whether the claim presented in this Court "is the 'same claim' as the one presented to the contracting officer." *Tolliver Grp.*, 20 F.4th at 776 (quoting *Raytheon*, 747 F.3d at 1354). To determine if the claims are the same, courts "consider the remedies sought and the elements of the claims . . . ." *Id.* (citing *K-Con Bldg. Sys.*, 778 F.3d at 1005); *see also K-Con Bldg. Sys.*, 778 F.3d at 1005 (noting that claims are not the same "if they *either* request different remedies (whether monetary or non-monetary) *or* assert grounds that are materially different from each other factually or legally").

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir.

14

2014) (quoting Restatement (Second) of Contracts § 205 (Am. L. Inst. 1981) (Restatement)). "[T]his implied covenant guarantees that the government will not eliminate or rescind contractual benefits through action that is specifically designed to reappropriate the benefits and thereby abrogate the government's obligations under the contract." *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014) (citing *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 829 (Fed. Cir. 2010)).   This is not a one-size-fits-all duty; courts must "take account of the particular contract at issue in considering a claim of breach of the good-faith-and-fair-dealing duty implicit in that contract." *Metcalf Constr.*, 742 F.3d at 992.  For example, the implied duty of good faith and fair dealing includes "the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019) (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)).  Actions such as "'[s]ubterfuges and evasions violate the obligation of good faith' as does lack of diligence and interference with or failure to cooperate in the other party's performance." *Malone v. United States*, 849 F.2d 1441, 1445 (Fed. Cir. 1988) (quoting Restatement § 241(e)) (alterations in original); *see also Aries Constr. Corp. v. United States*, 164 Fed. Cl. 290, 295 (2023) ("Thus, a claim for breach of good faith and fair dealing must include (1) a specific promise that was undermined, plus some combination of (2) subterfuge, evasion, or dishonesty, and (3) reappropriation of a reasonably expected benefit."). Ultimately, "[t]he implied duty of good faith and fair dealing is limited by the original bargain: it prevents a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value." *Metcalf Constr.*, 742 F.3d at 991; *see Doe v. United States*, 153 Fed. Cl. 629, 640 (2021) (quoting *Dobyns*, 915 F.3d at 739))*.*

Here, Taino did not adequately present its claim for breach of the implied duty of good faith and fair dealing to the contracting officer. Taino's Certified Claim simply requested payment for work that the Air Force did not accept. Certified Claim at 2–3. This is insufficient because it fails to allege sufficient facts to "give[] the contracting officer adequate notice of the basis . . . of the claim." *Scott Timber*, 333 F.3d at 1365 (quoting *Contract Cleaning Maint.*, 811 F.2d at 592); Certified Claim at 2–3. Taino's assertion that its Certified Claim put the contracting officer "on notice of [the breach of implied duty] claim, that the Government had denied Taino an amount due under the Contract and the general legal basis of the facts and general legal theory that support the claim for breach of good faith and fair dealing" is belied by Taino's Certified Claim on its face. Resp. at 12–13 (citing Certified Claim at 2–3); Certified Claim at 2–3.

Although the Certified Claim unquestionably provides adequate notice of the amount of the claim—$234,437.50, it fails to put the contracting officer on notice of the "substantive issues [] raised by the request." *Tolliver Grp.*, 20 F.4th at 776 (quoting *K-Con Bldg. Sys.*, 778 F.3d at 1006); Certified Claim at 2–3. Rather, Taino's Certified Claim, reproduced below, provides no adequate notice of the substantive issues raised by the request; indeed, it only contains the boilerplate language contained in the FAR. Certified Claim at 2–3; *see* FAR 15.406-2.

Certificate of Current Cost or Pricing Data

This is to certify that, to the best of my knowledge and belief, the cost or pricing data (as defined in section 2.101 of the Federal Acquisition Regulation (FAR) and required under FAR subsection 15.403-4) submitted, either actually or by specific identification in writing, to the Contracting Officer or to the Contracting Officer's representative in support of $234,437.50* are accurate, complete, and current as of _11/13/2023___**. This certification includes the cost or pricing data supporting any advance agreements and forward pricing rate agreements between the offeror and the Government that are part of the proposal.

Firm _____Taino Construction Group LLC_____

Signature _____

Name _____Steven Botas_____

Title ____Senior Project Manager_____

Date of execution***_____11/13/2023_____

* Contract Number FA480020C0004

*Contract Signed Date: 01/29/2020

Please see attached/Emailed supporting documentation

  1. Cost Sheet (Page 2)
  2. Copy of email to support request
  3. Copy of 3065 Progress Report


I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Certified Claim at 2.[10]  The contract cost breakdown, reproduced below, similarly fails to provide the contracting officer with adequate notice of the substantive issues that Taino now seeks to raise in this Court.

---

[10] Although not included with Exhibit N, the Certified Claim, Taino also submitted a copy of the Contract Progress Report and the Reynolds Email requesting a time to discuss issues with Taino and requesting a revised progress report.  Ex. O at 50–55.

## Contract Cost Breakdown

| | | |
|---|---|---|
| TOTAL BUDGET | $ | 968,750.00 |

| | | | |
|---|---|---|---|
| TCG PROJECT COMPLETION RATE | | 46.70% | *(percentage to Budget)* |
| PROJECT COMPLETION RATE IN AMOUNT | $ | 452,406.25 | |

| | | |
|---|---|---|
| INVOICE #101220 | $ | 145,312.50 |
| INVOICE #121520 | $ | 72,656.25 |
| TOTAL INVOICED AMOUNT | $ | 217,968.75 |

| | | |
|---|---|---|
| PROJECT COMPLETION RATE IN AMOUNT | $ | 452,406.25 |
| TOTAL INVOICED AMOUNT | $ | 217,968.75 |

| | | |
|---|---|---|
| TOTAL AMOUNT-NOT INVOICED | $ | 234,437.50 |

*Id.* at 3. This contract cost breakdown alleges nothing but money demanded. *Id.* Like the certification language, this cost breakdown does not contain a single fact or allegation that could put the contracting officer on notice of a breach of the implied duty of good faith and fair dealing. *Tolliver Grp.*, 20 F.4th at 776 ("The focus is on whether the contracting officer was given 'an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request.'" (quoting *K-Con Bldg. Sys.*, 778 F.3d at 1006)).

The CDA demands more specificity. For example, in *Tolliver Group*, the Federal Circuit found language in a certified claim requesting "'an equitable adjustment and payment . . . for allowable legal fees' was at so high a level of generality that, without further specification, it could cover materially distinct claims, and it did not give adequate notice of any specific claim." 20 F.4th at 776. By contrast, in *K-Con Building Systems*, the Federal Circuit explained that a party had properly submitted a certified claim where it "provide[d] ample detail regarding the basis for the claim, including . . . specific actions by the [Government]." 778 F.3d at 1007. Here, Taino's short, non-substantive email and certified claim included no details—let alone "ample detail" or

"specific actions." Thus, its Certified Claim falls short of the degree of specificity the Federal Circuit required in *K-Con Building Systems*, and instead resembles the insufficient, high-level summary rejected in *Tolliver Group*. *Id.*; *Tolliver Grp.*, 20 F.4th at 776; Certified Claim at 2–3.

As is clear from the reproduction Certified Claim above, the contracting officer could have only reasonably understood Taino's Certified Claim as seeking payment.[11] Certified Claim at 2–3. Such a generalized payment demand is insufficient to put the contracting officer on notice of a claim of breach of the implied duty of good faith and fair dealing because Taino included no factual or legal allegations of the types of claims that would typically constitute a breach of this duty, such as allegations that the Air Force (i) interfered with its performance, (ii) "eliminate[d] or rescind[ed] contractual benefits through action . . . specifically designed to reappropriate the benefits and thereby abrogate the government's obligations under the contract," or (iii) engaged in any form of subterfuge or dishonesty. *Dobyns*, 915 F.3d at 739 (quoting *Centex*, 395 F.3d at 1304); *Bell/Heery*, 739 F.3d at 1335 (citing *Precision Pine*, 596 F.3d at 829); *Malone*, 849 F.2d at 1445 (quoting Restatement § 241(e)); *see also Aries Constr.*, 164 Fed. Cl. at 295 ("Thus, a claim for breach of good faith and fair dealing must include (1) a specific promise that was undermined, plus some

---

[11] As noted, Taino did not include the Reynolds email and the Contract Progress Report in Exhibit N (the Certified Claim), even though those documents were also submitted with the Certified Claim. *See supra* note 10. Even considering the Certified Claim in context with the Reynolds Email and Contract Progress Report, there is no basis for Taino's argument that it presented its breach of implied duty claim. Ex. O at 37–59; Certified Claim at 3. At most, those documents demonstrate that Taino claims it was owed $234,437.50. Ex. O at 37–59; Certified Claim at 3. Even looking to Taino's cover email to the contracting officer, the Court still cannot find any statements that would put the contracting officer on notice of a claim for breach of the implied duty of good faith and fair dealing. *See* Ex. O at 50 ("I am writing an email with regard to the above subject matter, kindly find attached the Certificate Letter pricing data along with the Progress report and other supporting documents about the un-invoiced amount based on the total completion rate of TCG." (emphasis omitted)). And it appears that the contracting officer only understood Taino's request as a "claim[] they were not paid for work completed." *Id.* at 2.

combination of (2) subterfuge, evasion, or dishonesty, and (3) reappropriation of a reasonably expected benefit.").

Rather than explain why its Certified Claim put the contracting officer on notice of its claim for breach of the implied duty of good faith and fair dealing by citing specific factual allegations, Taino instead asserts that its breach of the implied duty claim and its breach of contract claim are "based on the same operative facts . . . , being the denial of its request for the Certified Payment seeking payment."[12]    Resp. at 12–13.    This argument, however, misses the Federal Circuit's direction that courts should "consider the remedies sought *and the elements of the claims* in assessing whether the sameness requirement is met." *Tolliver Grp.*, 20 F.4th at 776 (emphasis added).

While Taino asserts the same remedy under both its breach of contract and breach of implied duty claims, each claim requires materially distinct elements.  "To recover for a breach of contract, 'a party must allege and establish: (1) a valid contract between the parties, (2) an

---

[12] To support this position, Taino cites *M.A. DeAtley Constr., Inc. v. United States*, a 2007 Court of Federal Claims case in which the court held that a single, certified claim provided adequate notice to the contracting officer of both a claim for breach of contract and breach of the implied duty of good faith and fair dealing.  *Id.* at 14 (citing *M.A. DeAtley Constr., Inc. v. United States*, 75 Fed. Cl. 575, 580–81 (2007)).   *M.A. DeAtley Construction*, however, is readily distinguishable from this case.  Unlike here, the certified claim in *M.A. DeAtley Construction* included thorough and specific factual allegations that put the contracting officer on notice of specific facts underlying both claims, including numerous, detailed paragraphs of factual allegations.  *See id.* at 580.  The court concluded that these claims sufficiently alleged both breach of contract and breach of the implied duty of good faith and fair dealing because the "cause of action . . . [arose] from the same set of operative facts that was presented to the CO," which "clearly and unequivocally conveyed" its claims.  *Id.* at 580–81.  Therefore, while Taino is correct that breach of contract and breach of the implied duty *could* arise from the same operative facts, Taino's bare Certified Claim here did not contain sufficient factual detail clearly and unequivocally" conveying its claims to support such a finding.  *Contrast* Certified Claim at 2–3 (listing sum certain with no factual allegations), *with M.A. Atley Constr.*, 75 Fed. Cl. at 580–81 (concluding that thorough facts reproduced above were sufficient to put contracting officer on notice of both breach of contract and breach of implied duty claims).

obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach.'" *Oliva v. United States*, 961 F.3d 1359, 1362 (Fed. Cir. 2020) (quoting *San Carlos Irr. & Drainage Distrib. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)). Unlike breach of the implied duty of good faith and fair dealing, a breach of contract claim requires no assertion of dishonesty or subterfuge by the other party. *See Dobyns*, 915 F.3d at 739; *Bell/Heery*, 739 F.3d at 1335; *Malone*, 849 F.2d at 1445; *cf. E&I Glob. Energy Servs., Inc. v. United States*, No. 22-1472, 2022 WL 17998224, at *2 (Fed. Cir. Dec. 30, 2022) (affirming dismissal of implied duty claim where plaintiff never "pointed to a single specific instance in which [the Government] affirmatively misled [the plaintiff]"). Therefore, even if Taino's claim "was clear on what Taino was requesting, being the monies due [to] it under the Contract for work performed," Resp. at 12, as noted, Taino's two claims require materially different elements. Accordingly, the contracting officer was not on notice of Taino's breach of the implied duty claim via its breach of contract claim.[13] *See Tolliver Grp.*, 20 F.4th at 776; *K-Con Bldg. Sys.*, 778 F.3d at 1005.

In sum, Taino's Certified Claim was "at so high a level of generality that . . . it did not give adequate notice" to the contracting officer. *Tolliver Grp.*, 20 F.4th at 776. Thus, this Court lacks jurisdiction over, and must dismiss, Taino's breach of the implied duty of good faith and fair dealing claim pursuant to Rules 12(b)(1) and 12(h)(3).

---

[13] Further, if withholding money alone "was enough to establish a breach of the implied covenant of good faith and fair dealing, *every* breach of contract would also be a breach of the implied covenant." *Dotcom Assocs. I, LLC v. United States*, 112 Fed. Cl. 594, 600 (2013) (emphasis in original); *see also Goodearth Distrib., LLC v. United States*, No. 23-339, 2024 WL 247032, at *5 (Fed. Cl. Jan. 23, 2024) ("Failure to pay money a plaintiff alleges was owed in a contract dispute does not constitute a breach of the duty of good faith and fair dealing.").

## II.    Taino Fails to State a Claim Upon Which Relief Can Be Granted for Both Counts Because Taino Cannot Recover for Unaccepted Work.

Taino fails to state a claim upon which relief can be granted for both its breach of contract and its breach of the implied duty of good faith and fair dealing counts.[14]  Taino seeks to recover for allegedly completed work before the Air Force terminated its Contract.  Regardless of whether Taino completed the work, the Air Force did not accept Taino's work before it terminated Taino for cause.  Compl. ¶¶ 8, 37; Ex O at 21 (denying Taino's Contract Progress Report).  The Contract is clear that, in the event of a termination for cause, Taino is not entitled to recover for work not accepted.  Contract at 15 ("In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law.").  Taino is therefore not entitled to recover for the damages it seeks—payment for unaccepted work.

"The CDA exclusively governs Government contracts and Government contract disputes." *Cecile Indus.*, 995 F.2d at 1055.  Indeed, "[w]hen the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution." *Tex. Health Choice*, 400 F.3d at 898–99 (quoting *Dalton*, 50 F.3d at 1017); *see also M Nicolas Enters., LLC v. United States*, 155 Fed. Cl. 608, 618 n.3 (2021) (citing *Dalton*, 50 F.3d at 1017) ("If the CDA does apply to [p]laintiffs' breach of contract claim, then the CDA—not § 1491(a)(1)—would be the exclusive remedy.").

When contract provisions are "clear and unambiguous, they must be given their plain and ordinary meaning." *Bell/Heery*, 739 F.3d at 1331 (quoting *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)).  Further, "[a] contract must also be construed as a whole

---

[14] Taino seeks the same relief for both of its claims: payment for unaccepted work.  Compl. ¶¶ 44, 46, 50, 52; Resp. at 12–13.  Accordingly, the Court addresses both of Taino's claims in this section. This provides an alternative ground for dismissal of Taino's breach of implied duty claim, over which this Court also lacks jurisdiction.  *See supra* § I.

and 'in a manner that gives meaning to all of its provisions and makes sense.'" *Id.* (quoting *McAbee Constr.*, 97 F.3d at 1435). "Where a federal contract contains [] a disputes clause, and also provides a specific administrative remedy for a particular dispute, the contractor must exhaust its administrative contractual remedies prior to seeking judicial relief." *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1340 (Fed. Cir. 2000) (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)); *see also Claude Mayo Constr. Co., Inc. v. United States*, 132 Fed. Cl. 634, 637 (2017) ("[A] claim that is fully redressable under the contract . . . cannot be the basis of a separate breach of contract cause of action.").

The Contract expressly incorporates the CDA and multiple provisions of the FAR in full and by reference. Contract at 14 ("This Contract is subject to 41 U.S.C. chapter 71, Contract Disputes. . . . [Disputes] arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference." (quoting FAR 52.212-4(d))). FAR 52.233-1(f) provides that "[t]he Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in 41 U.S.C. chapter 71." FAR 52.233-1(f). That provision, Section 7104 of the CDA, provides that a contractor may appeal a contracting officer's final decision to an agency board within 90 days of the contracting officer's decision, or, alternatively, may appeal to the Court of Federal Claims within one year. 41 U.S.C. § 7104(a), (b)(1), (b)(3). FAR 52.212-4, incorporated into the Contract in full and by reference, provides that "[t]he Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor," and, that in the event of such a termination, "the Government shall not be liable to the Contractor for any amount for supplies or services not accepted . . . ." Contract at 15 (quoting FAR 52.212-4(m)); *see id.* at 13–16 (incorporating full text of FAR 52.212-4(m)).

Under the plain text of the Contract, Taino cannot recover for services that the Air Force did not accept before termination. *Id.* at 15. Indeed, the Contract expressly provides that, in the event of a termination for cause, "the Government shall not be liable to the Contractor for any amount for supplies or services not accepted." *Id.* (quoting FAR 52.212-4(m)). Here, Taino does not assert that the Air Force accepted the allegedly completed work for which it now contends it was not paid. *See generally* Compl. Rather, Taino acknowledges both that the Air Force never accepted any work beyond the 22.5% of work for which the Air Force properly paid Taino and that the Air Force expressly rejected Taino's final progress report showing 46.70% completion. Compl. ¶¶ 8, 37; Resp. at 16; *see also* Ex. O at 21 (denying Taino's Progress Report showing 46.70% completion). Put simply, under the plain terms of the Contract, Taino is not legally entitled to the payment it seeks. Contract at 15; *see Bell/Heery*, 739 F.3d at 1331. Because Taino's "[C]omplaint does not allege facts that show [it] is entitled to the legal remedy sought," Taino fails to state a claim upon which relief can be granted. *Steffen*, 995 F.3d at 1379.

Taino cites *Claude Mayo*, a 2017 Court of Federal Claims case, to support its position that it "is entitled to those payments [for work completed] even if the default termination was proper." Resp. at 17 (citing *Claude Mayo Constr.*, 132 Fed. Cl. at 637). *Claude Mayo* is neither binding on this Court nor factually analogous to this case. In *Claude Mayo*, a contractor brought breach of contract claims to recover "for work that was completed *and accepted by* [the Government]." 132 Fed. Cl. at 637 (emphasis added); *see also* Resp. at 17 ("Claude Mayo asserts a breach of contract based upon the government's failure to pay for *work it accepted* prior to the default termination." (emphasis added)). Here, Taino's Complaint, Exhibits, and Response each acknowledge that the Air Force did not accept the allegedly completed work. Compl. ¶¶ 8, 37; *see* Resp. at 17 ("The Complaint alleges that Taino's claim is for work completed prior to the termination."); Ex O at 21

(rejecting Taino's Contract Progress Report).  Therefore, while Taino is correct that "[t]ermination

for default does not preclude a claim for *accepted performance*," Taino acknowledges that it seeks

payment for work that the Air Force expressly rejected.  Resp. at 17–18 (emphasis added); Compl.

¶¶ 8, 37; Ex O at 21 (denying Taino's Progress Report).  As discussed above, the plain terms of

the Contract preclude recovery for services not accepted prior to termination.  Contract at 15.

Beyond the plain and unambiguous terms of the Contract, applicable jurisprudence also

supports this conclusion.  Mot. at 30–31 (discussing *Laka Tool & Stamping Co. v. United States*,

650 F.2d 270, 272 (Ct. Cl. 1981)); Resp. at 17 (same).  In *Laka Tool*, the Court of Claims reasoned

that "should [a contractor] be properly terminated for default without making any acceptable

deliveries in such a case, it would get nothing for the original work."  650 F.2d at 272; *see also*

*Bowman Constr. Co. v. United States*, 154 Fed. Cl. 127, 141 (2021) ("However, once a contract

has been terminated for default – a conclusion which stands in this case as a matter of law since

Plaintiff failed to timely challenge the termination – the contractor's ability to recover under the

contract is limited.").[15]  Taino also acknowledges that in *Laka Tool*—which is binding precedent

on this Court—"the court held that a contractor terminated for default could not recover for work

that was not accepted by the government."  Resp. at 17.

Unable to rebut the Contract's clear language, Taino unsuccessfully attempts to reframe its

claims in its Response in three key ways.  *Id.* at 16–18.  *First*, Taino asserts that "[t]he Federal

---

[15] As noted, the CDA provides that a contractor may appeal a contracting officer's final decision
to an agency board within 90 days of the contracting officer's decision, or, alternatively, may
appeal to the Court of Federal Claims within one year.  41 U.S.C. § 7104(a), (b)(1), (b)(3).  Thus,
because the September 20, 2021 Termination Notice constituted a "final decision of the contracting
officer," with the right to appeal under the Contract's Disputes clause, Taino's opportunity to
challenge the Termination Notice has passed.  *Id.*; Termination Notice at 2.  Therefore, Taino
cannot bring a challenge to the propriety of its termination for default here.  *See Bowman Constr.*,
154 Fed. Cl. at 141.

Circuit has recognized that claims for payment of completed work are distinct from challenges to a termination decision." *Id.* at 16 (citing *Scott Timber*, 333 F.3d at 1365). *Scott Timber* does not stand for this proposition. *See* 333 F.3d at 1365. Rather, the cited portion of *Scott Timber* discusses presentment of claims to the contracting officer, which, as explained above, relates to a jurisdictional question. That issue has no bearing on whether Taino properly stated a claim upon which relief can be granted. *Id.*

*Second*, Taino contends it can still recover for unaccepted work, even under FAR 52.212-4(m). Resp. at 16–18; *see also* FAR 52.212-4(m) ("In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted . . . ."); Contract at 15 (quoting FAR 52.212-4(m)). To support this conclusion, Taino asserts that it has properly pleaded the elements of a breach of contract. Resp. at 17. It argues that a failure to pay money when owed "is a paradigmatic breach of contract claim." *Id.* (quoting *Housing Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 626 (2020)). Maybe so, but the issue before the Court is whether Taino has "allege[d] facts that show [it] is entitled to the legal remedy sought." *Steffen*, 995 F.3d at 1379. Here, the legal remedy sought is payment for work that the Air Force did not accept prior to Taino's termination for cause. That remedy is foreclosed by the plain language of the Contract. Contract at 15 (quoting FAR 52.212-4(m)).[16]

---

[16] To the extent Taino's citation to *Housing Authority* and the elements of breach of contract are an attempt to assert a standalone breach of contract claim under Section 1491(a) of the Tucker Act, that claim must be rejected because the CDA provides an exclusive dispute mechanism for all of Taino's contract claims. *Boeing Co. v. United States*, 119 F.4th 17, 26 (Fed. Cir. 2024) ("Counts I, II, and III involve [plaintiff's] contract claims and should thus all be resolved under the exclusive dispute mechanism of the CDA . . . ."); *see Tex. Health Choice*, 400 F.3d at 898–99; Contract at 14 (noting that the Contract is governed by the CDA). Section 1491(a)(1) of the Tucker Act allows for breach of contract claims outside of the CDA context, such as in *Housing Authority*, 149 Fed. Cl. at 620, 624–25. That avenue is foreclosed here, however, because the CDA provides the exclusive dispute mechanism. *Tex. Health Choice*, 400 F.3d at 898–99.

*Third*, Taino asserts in its Response, with no citation, "that the Air Force improperly rejected its work."[17]  Resp. at 17.  The time for Taino to challenge the rejection of its work and its termination have long passed.  Indeed, the Air Force rejected Taino's Contract Progress Report showing 46.70% on April 26, 2011 and formally terminated Taino's Contract on September 20, 2021.  Ex. O at 21; Termination Notice at 2.  The September 20, 2021 Termination Notice constitutes a final decision of the contracting officer.  Termination Notice at 2.  Thus, Taino had the right to appeal under the Disputes Clause of its Contract.  *Id.*  The time for Taino to appeal in this Court, however, has long passed, and Taino additionally asserts that it does not challenge that termination here.  Compl. ¶¶ 8, 37, 38; Resp. at 17 ("Taino's claim is not based on an improper

---

Taino also cites *Claude Mayo*, claiming that it "is entitled to those payments [for work completed] even if the default termination was proper."  Resp. at 17 (citing *Claude Mayo Constr.*, 132 Fed. Cl. at 637).  *Claude Mayo* is neither binding on this Court nor factually analogous to this case.  In *Claude Mayo*, a contractor brought breach of contract claims to recover "for work that was completed *and accepted by* [the Government]."  132 Fed. Cl. at 637 (emphasis added); *see also* Resp. at 17 ("Claude Mayo asserts a breach of contract based upon the government's failure to pay for *work it accepted* prior to the default termination." (emphasis added)).  Here, Taino's Complaint, Exhibits, and Response each acknowledge that the Air Force did not accept the allegedly completed work prior to termination.  Compl. ¶¶ 8, 37; *see* Resp. at 17 ("The Complaint alleges that Taino's claim is for work completed prior to the termination."); Ex O at 21 (rejecting Taino's Contract Progress Report).  Therefore, while Taino is correct that "[t]ermination for default does not preclude a claim for *accepted performance*," Taino acknowledges that it seeks payment for work that the Air Force expressly rejected.  Resp. at 17–18 (emphasis added); Compl. ¶¶ 8, 37; Ex O at 21 (denying Taino's Progress Report).  Therefore, the plain language of the Contract forecloses Taino's recovery.  Contract at 15; *see Bell/Heery*, 739 F.3d at 1331 (quoting *McAbee Constr.*, 97 F.3d at 1435) (noting that "clear and unambiguous" contract provisions "must be given their plain and ordinary meaning").

[17] This assertion is supported by no citation or explanation.  Resp. at 17; *see SmartGene, Inc. v. Advanced Biological Lab'ys*, SA, 555 F. App'x 950, 954 (Fed. Cir. 2014) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived.").  Further, it is not clear that Taino plead this claim in its Complaint.  While Taino does allege that "[t]he Air Force breached its obligations and wrongfully refused to pay Taino for work it completed," Compl. ¶ 2, Taino's other references of refusals to pay reference the contracting officer's denial of Taino's certified claim in December 2023, *id.* ¶¶ 12, 16, 17, 41, 44; *see also Kimble v. United States*, 991 F.3d 1238, 1244 (Fed. Cir. 2021) ("[D]istinct claims are waived if not pled in a complaint.").

default termination."); Termination Notice at 2–3; *see* 41 U.S.C. § 7104(a), (b)(1), (b)(3) (providing contractors with twelve months to appeal a contracting officer's final decision to the Court of Federal Claims). Rather, the question before the Court is whether Taino can recover for allegedly completed work that the Air Force did not accept prior to termination. The answer— no—is eminently clear from the Contract.[18] *See* Contract at 15 (quoting FAR 52.212-4(m)); *Bell/Heery*, 739 F.3d at 1331 (quoting *McAbee Constr.*, 97 F.3d at 1435) (noting that "clear and unambiguous" contract provisions "must be given their plain and ordinary meaning").

Therefore, taking all of Taino's factual allegations as true, the plain terms of the Contract foreclose recovery under both of Taino's theories. *See* Contract at 15; FAR 52.212-4(m); *Bell/Heery*, 739 F.3d at 1331 (quoting *McAbee Constr.*, 97 F.3d at 1435). Because "the facts asserted by [Taino] do not entitle [it] to a legal remedy," Taino fails to state a claim upon which relief can be granted. *Lindsay*, 295 F.3d at 1257.

### III. Taino's Alternative Requests for Leave to Amend Its Complaint and to Stay the Case to Present a New Claim to the Contracting Officer Are Denied.

In a single sentence at the end of its Response to the Air Force's Motion to Dismiss, Taino requests an opportunity to amend its Complaint should the Court dismiss its Complaint. Resp. at 18. Separately, Taino requests that if the Court finds that Taino did not properly present its claim for breach of the implied duty of good faith and fair dealing, the Court stay this action to provide Taino with time to present this claim to the contracting officer. *Id.* at 14–15 (citing *Walsh Constr. Co. v. United States*, 132 Fed. Cl. 282, 291 (2017)). The Court denies both requests.

---

[18] Alternatively, nothing in Taino's bare Certified Claim or its accompanying documentation submitted to the contracting officer could be understood as alleging improper rejection of the work. *See supra* § I; Certified Claim at 2–3. Therefore, even if Taino properly challenged the rejection of its work, the Court would lack jurisdiction over the claim as Taino did not present such a claim to the contracting officer. *Tolliver Grp.*, 20 F.4th at 775; *supra* § I.

### A.    Taino Failed to Show That Any Amendment Would Not Be Futile.

The Court denies Taino's request for leave to file an amended complaint.  Under Rule 15(a), a plaintiff may amend its complaint "once as a matter of course" if done within 21 days of service of (i) the original complaint, (ii) a responsive pleading, or (iii) a motion under Rules 12(b), 12(e), or 12(f).  Rule 15(a)(1)(A)–(B).  "In all other cases," Rule 15(a)(2) permits a party to amend its pleadings "with the opposing party's written consent or the court's leave."  Rule 15(a)(2).  The Rule further states that courts should "freely give leave when justice so requires."  *Id.*  It is well established that the grant or denial of an opportunity to amend pleadings is "within the discretion of the [trial] court."  *Datascope Corp. v. SMEC, Inc.*, 962 F.2d 1043, 1045 (Fed. Cir. 1992) (citing *Zenith Radio Corp. v. Hazeltine Rsch, Inc.*, 401 U.S. 321, 330 (1971)).  A court will typically grant a motion to amend, unless amendment will be futile such that it cannot survive a dispositive pretrial motion.  *Dinh v. United States*, --- F.4th ----, 2025 WL 2165399, at *6 (Fed. Cir. July 31, 2025) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006); *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403–04 (Fed. Cir. 1989) (quoting *Foman*, 371 U.S. at 182 (1962)).

Taino requests that it "be given the opportunity to file an amended complaint to cure any deficiencies in the Complaint."  Resp. at 18.  Taino is no longer eligible to amend its Complaint as a matter of right and may only do so by written consent of the Air Force or by leave of the Court.  Rule 15(a).  Taino's one-sentence request, however, does not "proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion," which is required to overcome the futility standard.  Resp. at 18; *Kemin Foods*, 464 F.3d at 1354–55; *see also JG Techs., LLC v. United States*, 156 Fed. Cl. 691, 715 (2021) (citing *Kemin Foods*, 464 F.3d at 1355) (rejecting plaintiff's request to file second amended complaint because "[p]laintiff's one-paragraph request lacks sufficient factual detail or legal argument to allow the Court to conclude

29

that amendment would be a worthwhile endeavor").  As Taino provides no reasons in its one-sentence request why a hypothetical amended complaint would fare better than its Complaint, which this Court must dismiss as a matter of law, the Court concludes that amendment would be futile.  *Kemin Foods*, 464 F.3d at 1354–55; *JG Techs.*, 156 Fed. Cl. at 715 (citing *Kemin Foods*, 464 F.3d at 1355).  Indeed, when a party requests to amend its complaint to cure deficiencies, it must "explain how [it] would amend their complaint to establish government action or how any such edits would transform [its] allegations."  *Dinh*, --- F.4th at ----, 2025 WL 2165399, at *6. Here, Taino did neither.

Further, the Air Force's arguments were straightforward, persuasive, and well-supported by law: Taino's termination is final under the CDA, so it cannot bring claims for allegedly completed work that the Air Force did not accept.  *See* Mot. at 22–32; *supra* § II; *see also* Contract at 15 ("In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted . . . ." (quoting FAR 52.212-4(m))).  This Court found that Taino was not legally entitled to the relief it sought for allegedly completed work that the Air Force did not accept prior to termination.  *Supra* § II.  Thus, if Taino sought to challenge its 2021 termination in this Court, it needed to have filed that challenge within one year of the termination, which it did not.  *Id.*; Termination Notice at 2; Contract at 14 (noting that the contract is subject to the CDA); 41 U.S.C. § 7104(a), (b)(1), (b)(3) (providing contractors with twelve months to appeal a contracting officer's final decision to the Court of Federal Claims). Taino cannot cure its failure to timely challenge the 2021 Termination Notice by now amending its Complaint.  *Id.*

Finally, any amendment of Taino's claim for a breach of the implied duty of good faith and fair dealing would also be futile.  As this Court fully explained above, the Court lacks jurisdiction

over Taino's claim for breach of the implied duty of good faith and fair dealing because its Certified Claim lacked the "clear and unequivocal statement" required to put the contracting officer on notice of the nature of the claim. *Supra* § I. That jurisdictional defect cannot be cured with an amended complaint; rather, it can only be cured by presenting a new claim to the contracting officer with sufficient facts that "give[] the contracting officer adequate notice of the basis . . . of the claim." *Scott Timber*, 333 F.3d at 1365 (quoting *Contract Cleaning Maint.*, 811 F.2d at 592); *supra* § I.

In sum, Taino fails to explain in any regard why a proposed amendment could remedy these fatal issues. Even if it had included such an explanation, this Court has already held that (1) it lacks jurisdiction over Taino's breach of the implied duty of good faith and fair dealing claim because Taino failed to present it to the contracting officer and (2) Taino's recovery for allegedly completed work that was not accepted prior to termination is foreclosed under the plain terms of the Contract and CDA. Accordingly, Taino's alternative request is denied, both because its one-sentence request provided no reasoning to support its position and because, on the current record before the Court, it is evident that amendment of the Complaint would be futile. *Dinh*, --- F.4th at ----, 2025 WL 2165399, at *6; *Kemin Foods*, 464 F.3d at 1354–55; *JG Techs.*, 156 Fed. Cl. at 715 (citing *Kemin Foods*, 464 F.3d at 1355).

### B.    Taino's Alternative Request to Stay this Action is Denied.

The Court also denies Taino's alternative request to stay this case to potentially present its claim for breach of the implied duty of good faith and fair dealing to the contracting officer. Resp. at 14–15 (citing *Walsh Constr.*, 132 Fed. Cl. at 291). This Court's authority to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether and for how long to stay proceedings are matters "within

the sound discretion" of this Court. *Groves v. McDonough*, 34 F.4th 1074, 1079 (Fed. Cir. 2022); *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997). The Court declines to grant a stay here for two reasons. *First*, Taino's ability to bring a claim based on a properly presented claim for breach of the implied duty does not depend on this Court staying this action. Taino could have—and still can—present its breach of implied duty claim to the contracting officer and, if unhappy with the resolution, file a new Complaint in this Court based on that claim, subject to applicable law. *See, e.g.*, *Tolliver Grp.*, 20 F.4th at 775 ("The CDA mandates that '[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision.'" (quoting 41 U.S.C. § 7103(a)(1))). *Second*, as noted above, the Court must dismiss Taino's remaining claim, so no other, active claim remains in the case to stay while Taino presents its claim for breach of the implied duty of good faith and fair dealing to the contracting officer.

## CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS** the Air Force's Motion to Dismiss (ECF No. 12) pursuant to Rules 12(b)(1) and 12(b)(6) and **DISMISSES** Taino's Complaint. The Clerk of Court is **DIRECTED** to enter Judgment accordingly.


IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

32